**IRVING TRUST COMPANY, as Trustee for Teachers Insurance and Annuity Association of America, Northwestern National Life Insurance Company, and Northern Life Insurance Company, Teachers Insurance and Annuity Association of America, Northwestern National Life Insurance Company, and Northern Life Insurance Company, Plaintiffs,**

v.

**Elliott S. BRASWELL, Defendant.**

**No. 84 Civ. 6319 (SWK).**

United States District Court, S.D. New York.

Nov. 5, 1984.

Stroock & Stroock & Lavan, New York City, for plaintiffs; Jay P. Mayesh, Brian M. Cogan, New York City, of counsel.

Heller, Horowitz & Feit, P.C., New York City, for defendant; Richard F. Horowitz, Stuart A. Blander, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This action was commenced on August 31, 1984. The plaintiffs' claim is based on an alleged breach of contract by the defendant, Elliott S. Braswell. Plaintiffs claim that Braswell personally guaranteed certain loans, and that he has failed to satisfy that guarantee. By stipulation of the parties, Braswell's time to answer was extended until November 5, 1984.

Subsequent to the commencement of this action plaintiffs filed a motion to obtain a preliminary injunction. The plaintiffs originally requested the Court to hear this motion on October 11, 1984. At the request and consent of all of the parties the hearing for the preliminary injunction was postponed until October 18. In the interim, Braswell agreed not to dispose of any assets. The Court attempted to go forward with the hearing, as scheduled, on October 18. However, the defendant did not file any responsive papers until only moments before the hearing was to commence.

In order that an informed decision could be reached the Court rescheduled the hearing for October 26, 1984. In the interim, Braswell continued his stipulation not to dispose of any assets. This stipulation remained in effect until October 19. On that day the Court entered a temporary restraining order (hereinafter referred to as "TRO") against Braswell. This order, in effect, prevented Braswell from fraudulently disposing of his assets. The order was to remain in effect until the hearing occurred on October 26.

The hearing for the preliminary injunction went forward on October 26. The plaintiffs introduced several exhibits at this hearing. Braswell did not testify, choosing instead to submit a conclusory two page affidavit. At the conclusion of the hearing the Court ordered that the previously issued TRO be extended and remain in effect through November 5, 1984. Both the initial TRO and the subsequent extension were entered with full notice to Braswell.

The underlying facts regarding plaintiffs' breach of contract claim are not in dispute. On February 15, 1984 the three insurance company plaintiffs loaned $12,-000,000 to BSI Corporation (hereinafter referred to as "BSI"). BSI executed promissory notes in return for these funds. Braswell was the sole shareholder in BSI.

In connection with this loan to BSI, Braswell entered into a Guarantee and Pledge Agreement. The agreement was between Braswell and the fourth plaintiff, Irving Trust Company. In this agreement, Irving Trust was to serve as trustee for the three insurance company plaintiffs, and Braswell personally guaranteed payment of the promissory notes should BSI default.

BSI defaulted on the notes and commenced proceedings under Chapter 11 of the Bankruptcy Code on August 13, 1984. Braswell has failed to fulfill his obligations under the guarantee agreement, and has made no payments to cover BSI's default. The outstanding balance of the loan is $10,-861,312.00 plus interest.

On July 28, 1984 Braswell transferred a piece of real property he owned to his wife for ten dollars. Braswell had previously valued this property at $500,000. On August 8, 1984 Braswell's wife sold this property for $425,000. On August 16 Braswell made a gift to his wife of another piece of property he owned. Braswell had previously valued this property at $225,000. According to Braswell's Statement of Assets and Liabilities as of March 31, 1984 he had a net worth of $10,664,270. The foregoing facts, none of which are in dispute, must be evaluated in conjunction with the following facts. Braswell was the sole shareholder of BSI, had personally guaranteed loans which BSI had defaulted on, and BSI had filed for bankruptcy on August 13.

*Motions Before the Court*

As explained earlier, the plaintiffs have moved for a preliminary injunction. Braswell, in addition to opposing the preliminary injunction motion, has filed several motions. These include a motion to dismiss for lack of subject-matter jurisdiction, a motion to dismiss because of improper ven-

ue, and a motion to transfer under 28 U.S.C. § 1404. Plaintiffs have now also moved for summary judgment.

On October 31, 1984 the Court refused to sign an Order to Show Cause which essentially requested that Braswell's motions be decided prior to plaintiffs' motion for summary judgment. In the instant opinion the Court currently decides only plaintiffs' motion for a preliminary injunction and Braswell's motion to dismiss for lack of subject-matter jurisdiction. The Court reserves decision on all other pending motions, and will give Braswell adequate time to respond to the summary judgment motion.

*Jurisdiction*

■ The basis of the Court's subject-matter jurisdiction is 28 U.S.C. § 1332. Braswell contends that the Court lacks subject-matter jurisdiction over this action because plaintiffs have failed to join an indispensable party. Braswell argues that this action must be dismissed under Rule 19 of the Federal Rules of Civil Procedure because an indispensable party has not been joined and cannot be joined. The party which Braswell claims is indispensable cannot be joined because the presence of this party would destroy diversity among the parties in the instant case. Braswell's factual argument to support this theory is entirely frivolous and without merit.

Braswell contends that the First National Bank of South Carolina (hereinafter referred to as "FNBSC") is an indispensable party under Fed.R.Civ.P. 19. This is untrue. The transaction between FNBSC and BSI was a separate transaction from the instant one. It was a separate loan and was provided for in a separate loan agreement. Plaintiff—Irving Trust is the trustee for both loans, and this is provided for in the same written instrument. However, there are two separate and distinct obligations involved: one to FNBSC and one to the three insurance company plaintiffs in the instant case. Moreover, FNBSC has already commenced a separate law suit against Braswell in South Carolina.

I find that FNBSC is not an "indispensable party" within the meaning of Fed.R. Civ.P. 19(a). Moreover, even if it were, the action would still not be dismissed under Fed.R.Civ.P. 19(b). This is so because any judgment rendered by this Court will in no way prejudice FNBSC, and an adequate judgment can be rendered in the absence of FNBSC as a party to this litigation. Braswell's motion to dismiss this action for non-joinder of an indispensable party is, therefore, DENIED.

*The Preliminary Injunction*

To obtain a preliminary injunction in the Second Circuit plaintiffs must show the following:

(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). Plaintiffs have met all of the prongs of this test. Plaintiffs have shown that they will suffer irreparable harm without the preliminary injunction. If Braswell is permitted to fraudulently dispose of his assets the plaintiffs will be unable to enforce any judgment against him and Braswell's personal guarantee of the loans will be rendered meaningless.

Plaintiffs have also made a very strong showing that they are likely to succeed on the merits. Braswell has failed to assert any credible defense to plaintiffs' claims that BSI is in default and that Braswell has failed to fulfill his personal guarantee. The facts surrounding these claims are not in dispute.

Alternatively, given the terms of the injunction the Court will issue, and the substantial losses the plaintiffs stand to suffer, plaintiffs have shown a fair ground for litigation and a clear balance of hardships tipping decidedly in their favor. Thus, plaintiffs have fulfilled either of the alternative second prongs of the test.

■ Braswell does not take issue with any of the foregoing, nor does he dispute

that plaintiffs have made the requisite showing to obtain a preliminary injunction. Rather, the basis of his opposition to the issuance of the injunction is that Rule 64 of the Federal Rules of Civil Procedure precludes the issuance of an injunction in this case. The basis of subject-matter jurisdiction in the instant case is diversity of citizenship among the parties. Braswell contends that Fed.R.Civ.P. 64 provides the sole and exclusive basis for provisional remedies and interim relief in a diversity case. He argues that, despite Fed.R.Civ.P. 65, an injunction cannot issue in the instant case unless it is specifically authorized by New York State law.

Braswell argues that New York Law does not provide for, and specifically prohibits, the issuance of the type of preliminary injunction the plaintiffs are seeking. Rather, they must utilize New York's procedure for attachment, argues Braswell. In the same breath, however, he concedes that attachment is not available in the instant case because none of Braswell's assets are present in New York, nor are they subject to attachment under the New York statute.

Braswell's argument fails, however, in that he has failed to cite any authority for his contention that Fed.R.Civ.P. 64 is the sole basis in a diversity case for granting the type of relief the plaintiffs seek in the instant case. In effect, Braswell's position is that Fed.R.Civ.P. 65 does not apply in diversity cases, and a preliminary injunction may issue in diversity cases only when the controlling state law specifically authorizes it. This contention is wholly unsupported by any authority or by the language of Fed.R.Civ.P. 64. Indeed, at least one court has specifically rejected this contention. *Federal Trade Commission v. H.N. Singer*, 668 F.2d 1107, 1112 (9th Cir.1982). *See also Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc.*, 646 F.2d 800, 806 (2d Cir.1981), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982); ("State law does not govern the scope of the equity powers of the federal court; and this is so even when state law supplies the rules of decision."); *Clark Equipment Co. v. Arm-strong Equipment Co.*, 431 F.2d 54, 56 (5th Cir.), *reh'g denied*, 434 F.2d 1039 (5th Cir.1970), *cert. denied*, 402 U.S. 909, 91 S.Ct. 1382, 28 L.Ed.2d 650 (1971).

I reject Braswell's contention, and I find that neither Fed.R.Civ.P. 64, nor *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), preclude the issuance of the preliminary injunction sought in the instant case. Braswell's two page conclusory affidavit, in which he states that the two conveyances to his wife were not fraudulent because they did not render him insolvent, is also insufficient to defeat plaintiffs clear showing that they are entitled to a preliminary injunction. In view of the foregoing, the preliminary injunction, the specific terms of which are described below, is hereby GRANTED.

*Conclusions*

Braswell's motion to dismiss this action for failure to join an indispensable party is hereby DENIED. The plaintiffs' motion for a preliminary injunction is hereby GRANTED. Decision on all other pending motions is reserved at this time.

It is hereby further

ORDERED that the defendant, his agents, and all others acting in concert or participation with him, during the pendency of this action are preliminarily enjoined from: (a) making or causing to be made any conveyance, assignment, or other transfer, with or without consideration, of any real property belonging to the defendant; and (b) making or causing to be made any payment to any person or entity, or pledging, hypothecating, mortgaging or otherwise encumbering any of his assets, except for (i) the payment of his ordinary and necessary living expenses, or (ii) any payment made to obtain personalty or realty of reasonably equivalent value to such payment; and (c) releasing, waiving, or causing to be satisfied, in whole or in party, any debt owing to him, except by payment or cash or bond transferred to him for the full amount released or satisfied; and it is further

ORDERED that this preliminary injunction shall remain in effect until the underlying issues in the instant case are resolved or until otherwise modified by the Court.

SO ORDERED.